1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

NORTHERN DISTRICT OF CALIFORNIA

10

SAN JOSE DIVISION

11

12  ABDULLAH SILLAH,

Case No. 14-CV-01960-LHK

13          Plaintiff,

**FINDINGS OF FACT AND**
**CONCLUSIONS OF LAW FOLLOWING**
**BENCH TRIAL**

14      v.

15  COMMAND INTERNATIONAL
    SECURITY SERVICES, et al.,

16

17          Defendants.

18          Plaintiff Abdullah Sillah ("Plaintiff") brings this wage and hour suit against Plaintiff's

19  former employers Command International Security Services ("CISS"), Nafees Memon

20  ("Nafees"),[1] and Waqas "Nick" Memon ("Waqas").[2]  Plaintiff seeks damages for the following

21  causes of action: (1) failure to pay overtime wages in violation of the Fair Labor Standards Act

22  ("FLSA"), 29 U.S.C. §§ 207, 216(b), and 255(a); (2) failure to pay overtime wages and failure to

23  compensate an employee for all hours worked in violation of Cal. Labor Code §§ 510, 1194, 1197,

24

25  _____

[1] Throughout trial and in their closing briefs, the parties refered to Nafees Memon and Waqas
26  Memon by their first names to avoid confusion.  In these Findings of Fact and Conclusions of
    Law, the Court likewise refers to Nafees Memon and Waqas Memon by their first names.
27  [2] Waqas Memon's status as Plaintiff's employer is one of the legal issues the Court resolves in
    these Findings of Fact and Conclusions of Law.
28
                                                    1

United States District Court
Northern District of California

1771, and 1774; (3) liquidated damages for failure to pay at least minimum wage for all hours

worked in violation of Cal. Labor Code § 1194.2; (4) failure to provide rest breaks in violation of

Cal. Labor Code §§ 203, 226, 226.7, and 1194; (5) failure to provide meal breaks in violation of

Cal. Labor Code §§ 203, 226, 226.7, and 512; (6) failure to provide an itemized wage statement in

violation of Cal. Labor Code § 226; (7) wrongful termination in violation of public policy and Cal.

Labor Code § 1102.5(b); (8) retaliatory discharge in violation of Cal. Labor Code § 1102.5; and

(9) "waiting time" penalties for delay in paying undue compensation under Cal. Labor Code

§ 203.[3] ECF No. 1.

The Court held a three-day bench trial in this matter on November 2, 2015; November 3,

2015; and November 17, 2015. Huy Ngoc Tran represented Plaintiff, and William Ramsey

represented Defendants. Plaintiff testified at trial and also called as witnesses Abel Assamene,

Begashaw Bogale, Stephen Ng, and Bill Gamboa. Defendants' witnesses were Defendant Nafees

Memon and Defendant Waqas Memon. Counsel filed closing briefs on November 20, 2015.

Based on the trial and the full record in this matter, the Court makes the following credibility

determinations, findings of fact, and conclusions of law.

# I. CREDIBILITY DETERMINATIONS AFTER BENCH TRIAL

## A. Plaintiff's Case

Plaintiff presented the testimony of five witnesses—three security guards who worked for

CISS (including Plaintiff), one of Plaintiff's site supervisors, and a security guard hired by

Northeast Medical Center. The Court summarizes the testimony of Plaintiff's witnesses and states

the Court's credibility determination as to each witness.

### 1. Plaintiff Abdullah Sillah

Plaintiff Abdullah Sillah testified to the following regarding his employment with CISS,

including his pay, his job duties, his work hours, and his accommodations for the job sites where

---

[3] Plaintiff's complaint also included causes of action for failure to reimburse an employee for expenses in violation of Cal. Labor Code § 2802 and for unfair business practices in violation of Cal. Bus. & Prof. Code §§ 17200 *et seq.* ECF No. 1. The Court dismissed these counts with prejudice on November 3, 2015. ECF No. 93.

United States District Court
Northern District of California

Plaintiff worked:

Plaintiff was recruited to work for CISS by a man named Saleh Hamod,[4] who gave Plaintiff the contact information for CISS and told Plaintiff that CISS had a job opening. Trial Trans. Vol. 1 at 31:15-32:3, 32:23-24. Plaintiff then met with Waqas, and Waqas hired Plaintiff to work for CISS in July 2013. *Id.* at 28:19-29:3, 33:3-34:12. Plaintiff understood that he would receive a fixed salary of $1100 twice a month while working in Linda, Anaheim, and Ontario. *Id.* at 61:1-15, 79:23-80:2. While Plaintiff worked in San Jose, Plaintiff understood that he would receive a fixed salary of $1200 twice a month. *Id.* at 95:21-96:7. Plaintiff requested to have some of his paychecks sent to his nephew because Plaintiff did not have a bank account at the time and because Plaintiff owed money to his nephew. *Id.* at 156:15-157:5. Plaintiff was never informed about CISS's policy on meal or rest breaks and never received the CISS hiring packet describing the meal and rest break policies. *Id.* at 106:13-108:10.

Plaintiff worked for CISS at a worksite in Linda, California from July 2013 until October 2013, *id.* at 53:18-21; in Anaheim, California[5] for one weekend during December 2013, *id.* at 58:11-24, 61:16-17, 65:13-18; in Ontario, California from December 2013 (after Plaintiff had already worked in Anaheim) until about early February 2014, *id.* at 67:20-25, 79:19-20; and in San Jose, California from February 2014 until May 2014, *id.* at 79:19-20, 89:3-4. At each worksite, Plaintiff lived on-site in a trailer provided by Defendants. *Id.* at 37:17-25 (Linda), 62:8-11 (Anaheim), 69:6-11 (Ontario), 82:22-23 (San Jose). Except when Plaintiff trained security guards to replace Plaintiff, no other security guards were assigned to the same worksites as

---

[4] The individual known as Saleh Hamod is also known as Saleh Ali. Trial Trans. Vol. 2 at 337:1-5. For simplicity, the Court refers to this individual as Saleh Hamod throughout these Findings of Fact and Conclusions of Law.
[5] Anaheim is located within Orange County. Plaintiff testified that he considered Anaheim to be in Orange, California. Trial Trans. Vol. 1 at 65:3-4. Throughout trial, the parties and witnesses referred to the Anaheim worksite as both the Anaheim worksite and the Orange worksite. The parties are in agreement with regard to where Plaintiff worked over the course of Plaintiff's employment with CISS, though the parties do dispute exactly when Plaintiff relocated between worksites. *See* Exh. 31 (list of stipulated payments to Plaintiff by worksite, including the four worksites where the parties agree that Plaintiff worked). For simplicity, the Court refers to the Anaheim/Orange worksite as the Anaheim worksite throughout these Findings of Fact and Conclusions of Law.

Case No. 14-CV-01960-LHK
FINDINGS OF FACT AND CONCLUSIONS OF LAW FOLLOWING BENCH TRIAL

Plaintiff for the time period that Plaintiff was assigned to each of the worksites. *Id.* at 49:14-53:5 (Linda), 58:5-10 (Linda), 62:12-21 (Anaheim), 65:7-72:22 (Ontario), 85:1-89:2 (San Jose). Plaintiff's work hours in Linda were from 6 p.m. to 6 a.m. on weekdays and 24 hours per day on the weekend. *Id.* at 36:23-37:7. His work hours in Anaheim were 24 hours per day for one weekend only. *Id.* at 61:16-25, 62:12-17. His work hours in Ontario were initially 6 p.m. to 6 a.m. on weekdays and 24 hours per day on weekends but after the first two weeks his Ontario work schedule was 3 p.m. to 6 a.m. on weekdays and 24 hours per day on weekends. *Id.* at 68:23-69:5, 70:17-20. His work schedule in San Jose was 6 p.m. to 8 a.m. on weekdays and 24 hours per day on weekends. *Id.* at 82:12-19. Plaintiff would spend some time sleeping in the mornings on weekends, usually from 6 a.m. until noon. *Id.* at 122:7-12. He was permitted to eat during his work shifts, though he would not characterize eating during his shift as taking a break, and he never purchased or cooked food while on duty. *Id.* at 108: 13-14, 109:15-21.

Plaintiff had many complaints about CISS, which Plaintiff raised with Nafees, Waqas, Bill Gamboa, and Stephen Ng. *Id.* at 75:8-13, 75:21-24, 83:11. Among Plaintiff's complaints were that his trailer in Ontario lacked electricity and gas; his trailer in San Jose lacked electricity and a facility to shower; CISS was often late to pay Plaintiff; and CISS did not pay Plaintiff his full salary. *Id.* at 75:8-13, 75:21-24, 83:1-7, 84:20-22.

On April 30, 2014, Plaintiff gave notice to Nafees that Plaintiff would stop working for CISS on May 25, 2014. *Id.* at 101:18-25. In early May 2014, before Plaintiff's intended last day, Plaintiff was fired and given two hours to move out of the trailer in San Jose. *Id.* at 89:3-8, 105:21-106:10. Plaintiff believes he was fired for speaking with a lawyer. *Id.* at 103:18-21.[6]

Plaintiff also testified about his Daily Activity Reports ("DARs"). Exhs. 21, 44. Plaintiff was required to fill out a DAR for each day he worked, and at every worksite except San Jose

---

[6] Plaintiff additionally testified that he was told he was being fired for speaking with a lawyer because Saleh Hamod, a CISS recruiter, called to tell Plaintiff that Plaintiff was being fired for speaking with a lawyer. Trial Trans. Vol. 1 at 105:10-20. Over a hearsay objection from Defendants' counsel, Plaintiff's counsel explained that the contents of Saleh Hamod's conversation with Plaintiff were being offered to show Plaintiff's state of mind and Plaintiff's subsequent reaction. *Id.* at 104:14-105:3.

Plaintiff would submit his DARs to a supervisor. Trial Trans. Vol. 1 at 110:12-15, 113:15-16, 136:12-20. At some point, Plaintiff began making handwritten copies of his DARs for his own records. *Id.* at 117:20-118:6. The DARs state the worksite where Plaintiff worked on a given day, the time duty started, and the time duty ended, along with Plaintiff's comments on the shift. Exhs. 21, 44. The original handwritten copies as well as photocopies of the handwritten copies were submitted into evidence as Exhibits 44 and 21, respectively.

The Court finds Plaintiff's testimony regarding the terms and conditions of his work credible. Plaintiff's testimony about his job duties and hours was corroborated by the testimony of Abel Assamene, Begashaw Bogale, Bill Gamboa, and Stephen Ng. However, the Court found Plaintiff's DARs and Plaintiff's testimony regarding his DARs not credible. Plaintiff admitted that Plaintiff did a "sloppy job" in keeping his DARs once Plaintiff arrived in San Jose. Trial Trans. Vol. 1 at 134:17-21. Plaintiff's DARs contain numerous apparent errors and scratched-out changes to the dates, many of which Plaintiff could not explain at trial. *See, e.g.*, Trial Trans. Vol. 1 at 216:18-221:6 (describing some of the apparent errors and scratched-out dates). There are also multiple DAR entries for some dates, such as February 19-20, 2014, without any explanation for the apparent duplication. *See, e.g.*, Ex. 21 at AS023, AS053-54 (three entries for February 19-20, 2014). Plaintiff himself expressed confusion regarding the dates to which some of his DAR entries correspond. Trial Trans. Vol. 1 at 141:4-142:3 (Plaintiff's testimony initially identifying Ex. 21 at AS034-39 as dated in March and then identifying Ex. 21 at AS034-39 as dated in February). Accordingly, the Court affords Plaintiff's DARs and Plaintiff's testimony regarding his DARs little weight.

## 2. Abel Assamene

Abel Assamene testified as follows regarding his employment with CISS:

Assamene was recruited by Saleh Hamod to work for CISS in February 2014. Trial Trans. Vol. 2 at 241:8-22. Assamene was hired to replace Plaintiff as the security guard for the Ontario worksite and Plaintiff trained Assamene at the Ontario worksite for seven days when Assamene first began work for CISS. *Id.* at 242:18, 242:22-243:1, 245:1-5, 246:7-8. Assamene's first day of

work in Ontario was February 3, 2014, and Plaintiff trained Assamene until February 11, 2014. *Id.* at 269:18-22. Assamene lived in his car while he received training from Plaintiff and afterwards Assamene's living accommodations were the trailer provided by CISS and Assamene's car. *Id.* at 246:12-13, 254:25-255:9. Assamene was supposed to be paid $1100 every 15 days but Defendants did not always pay Assamene the full $1100. *Id.* at 251:22-24, 252:17-20. For example, for the month of February 2014, Assamene should have received $2200 but instead received only $500. *Id.* at 253:3-8. Assamene's work hours were 3 p.m. to 6 a.m. on Monday through Friday and noon to 6 a.m. on Saturdays and Sundays. *Id.* at 261:18-20. With the exception of Plaintiff while Plaintiff trained Assamene, no other guards from CISS had shifts at the Ontario worksite while Assamene worked in Ontario. *Id.* at 247:22-248:3. Assamene believed he was permitted to take meal breaks to get food whenever he was hungry and that he could take rest breaks to sleep. *Id.* at 257:4-15.

The Court found Assamene's testimony credible.

### 3. Begashaw Bogale

Begashaw Bogale testified to the following regarding his employment with CISS and acquaintance with Plaintiff:

Bogale was recruited by Saleh Hamod to work for CISS. Trial Trans. Vol. 2 at 317:3-11. Bogale began work for CISS on December 25, 2015, and he was assigned to a worksite in Chino, California. *Id.* at 317:3-4, 317:25. Bogale was the only guard assigned to work in Chino. *Id.* at 319:2-5. His work hours were 4 p.m. to 6 a.m. Monday through Friday and 24 hours per day on the weekends. *Id.* at 319:6-11. He was introduced to Plaintiff before starting work in Chino, and Plaintiff subsequently trained and mentored Bogale. *Id.* at 318:4-14. Bogale would call Plaintiff with questions and sometimes Plaintiff would drive to Chino to teach and assist Bogale. *Id.* at 318:12-14, 318:20-319:1. Plaintiff would drive to Chino to see Bogale on Monday through Friday sometime between noon and 1 p.m. *Id.* at 319:16-21. Bogale understood his compensation to be $1100 every two weeks. *Id.* at 317:21-23. Defendants often paid Bogale late and at some point Defendants decreased Bogale's pay to $960 every two weeks. *Id.* at 320:7-16. On January 29,

2014, Bogale and Plaintiff went together to CISS's offices to complain to Nafees and Waqas about the fact that CISS was late paying Bogale and Plaintiff. *Id.* at 322:5-323:8.

The Court found Bogale's testimony credible.

### 4. Bill Gamboa

William "Bill" Gamboa testified to the following regarding his acquaintance with Plaintiff:

Gamboa is employed by Oltmans Construction Company ("Oltmans"), and he was the superintendent for a job in Ontario, California. Trial Trans. Vol. 2 at 282:12, 285:9-11. Oltmans hired CISS to provide security guards for the Ontario worksite. *Id.* at 283:5-18, 285:17-22. Oltmans asked CISS to provide security guards in Ontario for approximately six months, beginning December 2013. *Id.* at 285:17-286:1. Plaintiff was the first security guard sent by CISS to the Ontario worksite, and Plaintiff began work in Ontario by December 16, 2013. *Id.* at 286:2-18. Gamboa does not recall how long Plaintiff worked in Ontario, but Gamboa estimates it was for six or seven weeks. *Id.* at 289:7. Plaintiff was the only security guard for Ontario until Plaintiff left and was replaced by Assamene. *Id.* at 291:12-292:11. Gamboa regularly was at the Ontario worksite from 5:30 a.m. until 3:30 p.m. on Monday through Friday, though he would sometimes stay as late as 6 p.m. *Id.* at 287:6-21. During the time that Plaintiff was assigned as the security guard for Ontario, Gamboa would occasionally arrive at the Ontario worksite at midnight to perform night work. *Id.* at 287:22-288:10. Gamboa never saw any security guard from CISS at the Ontario worksite other than Plaintiff. *Id.* at 288:25-289:3. At some point, Plaintiff complained to Gamboa that CISS was not paying Plaintiff promptly, and Gamboa brought the matter to CISS's attention on Plaintiff's behalf. *Id.* at 293:4-294:4.

The Court found Gamboa's testimony credible.

### 5. Stephen Ng

Stephen Ng testified to the following regarding his acquaintance with Plaintiff:

Ng is employed by Northeast Medical Services. Trial Trans. Vol. 2 at 300:20-21. Beginning in September 2013, Ng worked for Northeast Medical Services as a security guard in San Jose. *Id.* at 301:5-6, 301:18-25. As a security guard, Ng was responsible for two properties

7

located a block apart from each other—the 1870 Lundy site and the 1715 Lundy site. *Id.* at 301:18-25, 301:10-16. Northeast Medical Services contracted with CISS to provide security coverage at the 1870 Lundy site. *Id.* at 303:10-15. CISS initially provided a guard named Fente for 1870 Lundy, but Plaintiff replaced Fente as the guard for 1870 Lundy. *Id.* at 303:21-304:7. Ng never had any indication that any other guard worked at 1870 Lundy during the time that Fente worked there. *Id.* at 305:16-21. Plaintiff arrived at 1870 Lundy sometime between January and March of 2014, and Ng no longer saw Fente at 1870 Lundy once Plaintiff arrived. *Id.* at 304:9-21. Ng checked in on Plaintiff every day between 6 p.m and 7 p.m. *Id.* at 304:25-305:9, 306:11-13. Ng asked Plaintiff to put up parking lot chains at 7 p.m. and take the chains down at 7 a.m. every day. *Id.* at 308:13-25. Ng never had any indication that any other guard worked at 1870 Lundy during the time that Plaintiff worked there. *Id.* at 307:19-25. After Plaintiff stopped working at 1870 Lundy, Plaintiff was replaced by multiple guards working in shifts. *Id.* at 310:17-19, 311:3-6.

The Court found Ng's testimony credible.

### B. Defendants' Case

Defendants presented the testimony of two witnesses—Defendant Nafees Memon and Defendant Waqas Memon. The Court summarizes Defendants' testimony and states the Court's credibility determination as to each witness.

#### 1. Defendant Nafees Memon

Defendant Nafees Memon testified to the following regarding CISS's policies and employment of Plaintiff:

Nafees started CISS in 2008. Trial Trans. Vol. 2 at 424:19-23. Nafees owns CISS as a sole proprietorship and sets all of the policies and procedures for CISS. *Id.* at 425:3-8, 425:14-15. Waqas worked for CISS in the role of operation manager, and no one at CISS had more authority or rank than Waqas other than Nafees. Trial Trans. Vol. 3 at 524:6-13. Nafees gave Waqas the authority to hire security guards, assign security guards to worksites, sign contracts with clients, discipline employees, receive employee complaints, and respond to employee complaints. *Id.* at

8

523:2-14, 524:14-525:8. However, Waqas could not deviate from company policy. *Id.* at 523:17-24.

Nafees was in Pakistan when Plaintiff was hired. Trial Trans. Vol. 2 at 427:3-5. CISS paid Plaintiff minimum wage. *Id.* at 490:10-11. CISS had a policy of paying employees overtime and of giving new hires the company handbook, which was introduced as Exhibit 24 and describes CISS's meal and rest break policy. *Id.* at 426:18-21, 427:23-428:25. Nafees recorded the hours CISS employees were scheduled to work each pay period, including any necessary adjustments to the schedule based on when guards actually worked. *Id.* at 462:12-464:17. Four to five days after a pay period ended, Nafees's record of the work schedule would be formalized in CISS's scheduling records. *Id.* at 469:4-13, 469:24-470:1. CISS's employees were paid semimonthly after the final scheduling records were prepared. *Id.* at 469:2-8, 470:2-8. The scheduling records showing the hours Plaintiff was scheduled to work and for which CISS paid Plaintiff are in Exhibits 3 through 20. Trial Trans. Vol. 2 at 456:7-457:8, 468:2-8.

Nafees provided several definitions for a "workweek." Nafees testified at trial that a workweek runs from Monday through Sunday. Trial Trans. Vol. 3 at 516:7-517:9. He testified at his deposition that a workweek is every five days, and also that a workweek is whenever a guard works forty hours. *Id.* at 516:18-517:6, 517:14-16. Nafees testified that if a pay period ends in the middle of a workweek, hours worked in the first half of the workweek are considered a separate workweek from hours worked in the second half of the workweek. *Id.* at 519:18-520:3.

Plaintiff was fired after CISS received a complaint from the site manager for the San Jose worksite. *Id.* at 435:22-442:13. Nafees testified that he did not learn about the lawsuit filed by Plaintiff until after removing Plaintiff from the San Jose job. *Id.* at 442:14-15.

The Court found the CISS scheduling records authorized by Nafees and Nafees's testimony as to the terms and conditions of Plaintiff's work for CISS not credible. Nafees's testimony that other guards were assigned to work shifts to relieve Plaintiff was contradicted by the testimony of Plaintiff, Assamene, Gamboa, and Ng, all of whom had testified that they believed no guards ever relieved Plaintiff. Defendants' scheduling records were also contradicted

United States District Court
Northern District of California

by the testimony of Plaintiff, Assamene, and Gamboa. All three of these witnesses testified that they were familiar with the Ontario worksite while Plaintiff worked there, but none of them recognized the names of any of the guards listed in Defendants' scheduling records as working shifts to relieve Plaintiff. Trial Trans. Vol. 1 at 70:23-71:11 (Plaintiff's testimony); Trial Trans. Vol. 2 at 248:7-17 (Assamene's testimony), 289:21-290:17 (Gamboa's testimony).

Additionally, Nafees provided inconsistent testimony with regard to the compensation and job responsibilities of CISS security guards. With respect to compensation, Nafees first testified that guards were paid minimum wage, then testified that some guards received greater than minimum wage for working special events or for working shifts in multiple locations. *Id.* at 425:22-426:5. When asked why one guard assigned to work in Linda received more than the minimum wage for Linda, Nafees responded that the guard in question received the higher wage because the higher wage is the minimum wage in San Jose. Trial Trans. Vol. 2 at 490:1-9. Nafees did not explain why the guard received the minimum wage for San Jose, which is in Santa Clara County, for work performed in Linda, which is in Yuba County. *Id.*; Trial Trans. Vol. 3 at 502:21-503:2. Nafees testified that he could not produce any scheduling records showing the other worksites to which the guards who relieved Plaintiff were assigned because CISS discarded all scheduling records other than the scheduling records that showed Plaintiff's work hours. Trial Trans. Vol. 3 at 504:13-17. Nafees does not remember when he discarded the other scheduling records. *Id.* at 504:24-505:2. Furthermore, Nafees's testimony regarding how to calculate the hours worked by an employee during a workweek if the pay period ends midweek was directly contradicted by the testimony of Waqas. *Id.* at 568:10-11 (Waqas's testimony that Nafees's explanation of how to calculate hours when the pay period ends in the middle of a workweek was incorrect).

Nafees's testimony about the guards' responsibility to complete DARs was also inconsistent. Nafees first testified that all security guards are required to submit DARs. Trial Trans. Vol. 2 at 478:13-17. Nafees next testified that only the main guard for a worksite submits a DAR. *Id.* at 479:9-15. Nafees then testified that the guards assigned to a worksite decide on their

10

United States District Court
Northern District of California

own who will complete the DARs. *Id.* at 481:4-5. Nafees later testified that when there is no main guard, the guard who finishes the morning shift submits the DAR. *Id.* at 483:7-9.

Accordingly, because the Court finds Nafees's testimony and scheduling records not credible, the Court affords little weight to Nafees's testimony and to Defendants' scheduling records.

### 2. Defendant Waqas Memon

Defendant Waqas Memon testified to the following regarding his involvement at CISS:

Waqas was an employee of CISS. Trial Trans. Vol 3 at 543:15-17. Waqas hired Plaintiff to work for CISS on July 2, 2013. *Id.* at 544:4-11. Waqas reviewed CISS's hiring packet, including the meal and rest break policies, with Plaintiff when Plaintiff was hired. *Id.* at 545:25-546:4. Waqas told Plaintiff that CISS would guarantee Plaintiff at least $2200 per month. *Id.* at 544:16-18. Plaintiff requested to be paid in cash. *Id.* at 545:5-8. Waqas made the schedule for CISS's security guards and ran payroll while Nafees was in Pakistan. *Id.* at 547:11-19, 567:1-6. Waqas testified that when running payroll he would calculate employees' overtime based on a workweek beginning on Monday, even if the pay period ended mid-week. *Id.* at 565:11-17. Waqas testified that Nafees's explanation of how CISS calculates overtime was incorrect. *Id.* at 568:10-11.

The Court found Waqas's testimony not credible. Waqas's testimony relied upon the scheduling records produced by Defendants, to which the Court affords little weight. Additionally, Waqas testified about a security guard named Muhammad Anwar who Waqas said worked shifts at the Ontario worksite and other CISS worksites. Trial Trans. Vol. 3 at 558:9-10, 576:20-25. However, Waqas was unable to identify any scheduling records showing Anwar scheduled to work any shifts for CISS. *Id.* at 577:20-578:4. Accordingly, the Court affords little weight to Waqas's testimony.

## II. STIPULATED FACTS

In their joint pretrial conference statement, the parties agreed to the following stipulated facts:

United States District Court
Northern District of California

1.  Plaintiff was employed by Defendant Nafees Memon as a security guard.

2.  Defendant Nafees Memon was in Pakistan on the date Plaintiff was hired.

3.  Plaintiff was hired by Defendant Waqas Memon to work for CISS.

4.  Plaintiff was notified of the terms and conditions of his employment with CISS by Defendant Waqas Memon.

5.  Defendant Nafees Memon was unaware that Plaintiff had been hired until he returned from Pakistan.

6.  Defendants have a written policy for meal and rest breaks in their handbook.

7.  Plaintiff had never seen the schedules Defendants produced prior to Plaintiff's initiation of this Action.

8.  Plaintiff filed this lawsuit on April 29, 2014.

9.  On April 30, 2014, Plaintiff sent a text to Defendant Nafees Memon's cell phone stating that he would be leaving at the ". . . end of this month may to start another job" and when asked when would be his ". . . last day" Plaintiff responded ". . . it will be May 25th last day." In that same text exchange, Defendant Nafees Memon, after hearing Plaintiff was quitting, greeted Plaintiff with "Assalam alekum brother" and Plaintiff likewise responded cordially with "inshullah."

ECF No. 77 at 6-7.

Additionally, the parties have stipulated that Plaintiff received all of the payments listed in Exhibit 31. Trial Trans. Vol. 2 at 354:21-24. Defendants further admit that they did not provide Plaintiff with accurate wage statements, in violation of Cal. Labor Code § 226. ECF No. 77 at 3.

## III. FINDINGS OF FACT

Based on the testimony at trial and the exhibits admitted into evidence, the Court makes the following findings of fact.

### A. Plaintiff's Work Schedule

Plaintiff was hired by Waqas Memon to work for CISS on July 2, 2013. Exh. 30 (Plaintiff's job application, dated July 2, 2013); ECF No. 77 at 7. During Plaintiff's employment

12

with CISS, Plaintiff worked in Linda, California; Anaheim, California; Ontario, California; and San Jose, California. Throughout Plaintiff's employment with CISS, Plaintiff took breaks during his work shifts when necessary. Trial Trans. Vol. 1 at 108: 13-14, 109:15-21; *accord* Exh. 24 (CISS handbook, including meal and rest break policy); ECF No.77 at 7 (stipulation that Defendants have a written meal and rest break policy); Trial Trans. Vol. 2 at 257:4-15 (Assamene, who replaced Plaintiff in Ontario and who was trained by Plaintiff, believed meal and rest breaks were permitted as necessary).

Plaintiff's work schedule by worksite was as follows:

**1. Linda, California**

Plaintiff worked in Linda, California from July 3, 2013 until approximately October 15, 2013. Trial Trans. Vol. 1 at 181:1-3, 58:11-14. Because the Court finds Plaintiff's testimony regarding his hours credible and Defendants' scheduling records not credible, the Court finds that Plaintiff's hours in Linda were from 6 p.m. to 6 a.m. on weekdays and from noon until 6 a.m. on the weekend. *Id.* at 36:23-37:7, 122:7-12. Plaintiff slept from 6 a.m. to noon on weekends. *Id.* at 122:7-12.

**2. Anaheim, California**

Plaintiff worked in Anaheim, California for one weekend in December 2013. *Id.* at 61:16-25, 62:12-17. Because the Court finds Plaintiff's testimony regarding his hours credible and Defendants' scheduling records not credible, the Court finds that Plaintiff's hours in Anaheim were noon until 6 a.m. *Id.* at 122:7-12. Plaintiff slept from 6 a.m. to noon on weekends. *Id.*

**3. Ontario, California**

Plaintiff does not recall the exact dates he was assigned to work in Ontario. Trial Trans. Vol. 1 at 67:20-25, 79:19-20. Because the Court finds the testimony of Gamboa and Assemene credible, the testimony of Defendants not credible, and Defendants' scheduling records not credible, the Court adopts Gamboa's estimate of when Plaintiff arrived in Ontario and Assemene's estimate of when Plaintiff left Ontario. Accordingly, the Court finds that Plaintiff worked in Ontario, California from approximately December 16, 2013 until approximately February 11,

2014.  Trial Trans. Vol. 2 at 269:18-22, 286:8-10, 286:14-18.

Because the Court finds Plaintiff's testimony regarding his hours credible and Defendants' scheduling records not credible, the Court finds that Plaintiff's work schedule in Ontario for the first two weeks were 6 p.m. to 6 a.m. on weekdays and noon to 6 a.m. on weekends.  Trial Trans. Vol. 1 at 68:23-69:5, 122:7-12.  After the first two weeks, Plaintiff's work schedule in Ontario was 3 p.m. to 6 a.m. on weekdays and noon to 6 a.m. on weekends.  *Id.* at 70:17-20, 122:7-12; Ex. 37 at CISS000051 (contract between Oltmans and CISS for the Ontario worksite requesting a security guard for 15 hours a day on weekdays and 24 hours a day on weekends).  Plaintiff slept from 6 a.m. to noon on weekends.  Trial Trans. Vol. 1 at 122:7-12.

### 4.  San Jose, California

Plaintiff does not recall the exact date he stopped working in Ontario and began working in San Jose.  Trial Trans. Vol. 1 at 79:19-20.  Because the Court finds the testimony of Assemene credible, the testimony of Defendants not credible, and Defendants' scheduling records not credible, the Court adopts Assamene's estimate of when Plaintiff left Ontario for San Jose. Plaintiff also does not recall the exact date when he was fired from the San Jose worksite.  *Id.* at 89:3-6.  Defendant Nafees testified that Plaintiff was fired in response to a complaint about Plaintiff received by email from the San Jose supervisor.  Trial Trans. Vol. 2 at 435:22-442:13. Although the Court finds Nafees's testimony in general not credible, the Court finds credible Exhibit 23, which is an email chain between the San Jose supervisor Wyland Chu and Nafees. Exhibit 23 shows Wyland Chu complaining to Nafees about Plaintiff on May 5, 2014, which is approximately when Plaintiff believes he was fired.  *See* Exh. 23 at CISS000026 (May 5, 2014 email from Wyland Chu to Nafees Memon complaining about Plaintiff's work in San Jose); Trial Trans. Vol. 1 at 89:3-4 (Plaintiff's testimony that he was fired in early May).

Accordingly, the Court finds that Plaintiff worked in San Jose, California from approximately February 12, 2014 until he was fired on May 5, 2014.  Trial Trans. Vol. 1 at 79:19-20, 89:3-4 (Plaintiff's recollection of approximately when he worked in San Jose); Trial Trans. Vol. 2 at 269:18-22 (Assemene's testimony about when Plaintiff left Ontario for San Jose); Ex. 23

14

(email from Wyland Chu to Nafees Memon complaining about Plaintiff's work in San Jose). Because Plaintiff worked overnight, Plaintiff's last workday in San Jose was May 4, 2014, the day before Plaintiff was fired. Plaintiff's hours in San Jose were from 6 p.m. until 8 a.m. on weekdays and from noon to 6 a.m. on weekends. Trial Trans. Vol. 1 at 82:12-19, 122:7-12; Ex. 37 at CISS000053 (contract between Northeast Medical Services and CISS for the San Jose worksite requesting a security guard from 6 p.m. to 8 a.m. on weekdays and 24 hours a day on weekends). Plaintiff slept from 6 a.m. to noon on weekends. Trial Trans. Vol. 1 at 122:7-12.

### B. Plaintiff's Total Hours

Based on the Court's findings regarding Plaintiff's work schedule and the dates Plaintiff worked at each worksite, the Court finds that Plaintiff's total number of hours worked by week[7] at each worksite are as follows:

| | Regular Hours[8] | Overtime Hours[9] | Double Overtime Hours[10] | Total Hours |
|---|---|---|---|---|
| **Linda** | | | | |
| 7/3/13 - 7/7/13 | 40 | 20 | 12 | 72 |
| 7/8/13 - 7/14/13 | 40 | 40 | 16 | 96 |
| 7/15/13 - 7/21/13 | 40 | 40 | 16 | 96 |
| 7/22/13 - 7/28/13 | 40 | 40 | 16 | 96 |
| 7/29/13 - 8/4/13 | 40 | 40 | 16 | 96 |
| 8/5/13 - 8/11/13 | 40 | 40 | 16 | 96 |
| 8/12/13 - 8/18/13 | 40 | 40 | 16 | 96 |
| 8/19/13 - 8/25/13 | 40 | 40 | 16 | 96 |
| 8/26/13 - 9/1/13 | 40 | 40 | 16 | 96 |

[7] Under FLSA, the "workweek" is defined as "a fixed and regularly recurring period of 168 hours--seven consecutive 24-hour periods." 29 C.F.R. § 778.105. The workweek "need not coincide with the calendar week but may begin on any day and at any hour of the day." Nafees provided multiple definitions of a "workweek," one of which was that a workweek runs from Monday through Sunday. Trial Trans. Vol. 3 at 516:7-517:9. The Court adopts Nafees's definition that a workweek runs Monday through Sunday. Specifically, the Court calculates Plaintiff's overtime hours using a workweek that begins on Monday at noon. Hours worked in a day are calculated based on hours worked from noon on the day of the workday until the following day.
[8] The Court uses the term "regular hours" to refer to those hours that are to be compensated at the employee's regular rate of pay under Cal. Labor Code § 510.
[9] The Court uses the term "overtime hours" to refer to those hours that are to be compensated at 1.5 times the employee's regular rate of pay under Cal. Labor Code § 510.
[10] The Court uses the term "double overtime hours" to refer to those hours that are to be compensated at 2 times the employee's regular rate of pay under Cal. Labor Code § 510.

Case No. 14-CV-01960-LHK
FINDINGS OF FACT AND CONCLUSIONS OF LAW FOLLOWING BENCH TRIAL

| | | | |
|---|---|---|---|
| 9/2/13 - 9/8/13 | 40 | 40 | 16 | 96 |
| 9/9/13 - 9/15/13 | 40 | 40 | 16 | 96 |
| 9/16/13 - 9/22/13 | 40 | 40 | 16 | 96 |
| 9/23/13 - 9/29/13 | 40 | 40 | 16 | 96 |
| 9/30/13 - 10/6/13 | 40 | 40 | 16 | 96 |
| 10/7-13 - 10/13/13 | 40 | 40 | 16 | 96 |
| 10/14/13 - 10/15/13 | 16 | 8 | 0 | 24 |
| *Total:* | *616* | *588* | *236* | *1440* |
| **Anaheim** | | | | |
| 12/14/13 - 12/15/13[11] | 16 | 8 | 12 | 36 |
| *Total:* | *16* | *8* | *12* | *36* |
| **Ontario** | | | | |
| 12/16/13- 12/22/13 | 40 | 40 | 16 | 96 |
| 12/23/13 - 12/29/13 | 40 | 40 | 16 | 96 |
| 12/30/13 - 1/5/14 | 40 | 40 | 31 | 111 |
| 1/6/14 - 1/12/14 | 40 | 40 | 31 | 111 |
| 1/13/14 - 1/19/14 | 40 | 40 | 31 | 111 |
| 1/20/14 - 1/26/14 | 40 | 40 | 31 | 111 |
| 1/27/14 - 2/2/14 | 40 | 40 | 31 | 111 |
| 2/3/14 - 2/9/14 | 40 | 40 | 31 | 111 |
| 2/10/14 - 2/11/14[12] | 16 | 8 | 6 | 30 |
| *Total:* | *336* | *328* | *224* | *888* |
| **San Jose** | | | | |
| 2/12/14 – 2/16/14 | 24 | 32 | 22 | 78 |
| 2/17/14 – 2/23/14 | 40 | 40 | 26 | 106 |
| 2/24/14 – 3/2/14 | 40 | 40 | 26 | 106 |
| 3/3/14 – 3/9/14 | 40 | 40 | 26 | 106 |
| 3/10/14 – 3/16/14 | 40 | 40 | 26 | 106 |
| 3/17/14 – 3/23/14 | 40 | 40 | 26 | 106 |
| 3/24/14 – 3/30/14 | 40 | 40 | 26 | 106 |
| 3/31/14 – 4/6/14 | 40 | 40 | 26 | 106 |
| 4/7/14 – 4/13/14 | 40 | 40 | 26 | 106 |
| 4/14/14 – 4/20/14 | 40 | 40 | 26 | 106 |
| 4/21/14 – 4/27/14 | 40 | 40 | 26 | 106 |
| 4/28/14 – 5/4/14 | 40 | 40 | 26 | 106 |
| *Total:* | *464* | *472* | *308* | *1244* |

---

[11] Plaintiff does not recall the exact date he worked in Anaheim, other than that it was a weekend in December before Plaintiff worked in Ontario. The Court finds that Plaintiff began work in Ontario on December 16, 2013, so the Court uses the dates of the preceding weekend—December 14-15, 2013—as the dates Plaintiff worked in Anaheim.

[12] Plaintiff worked in both Ontario and San Jose for this workweek. The Court's overtime calculation accounts for the hours Plaintiff worked in both locations.

16

**C. Plaintiff's Pay**

While employed by CISS in Linda, Anaheim, and Ontario, Plaintiff was to receive a salary of $1100 twice a month. Trial Trans. Vol. 1 at 61:1-15, 79:23-80:2. While employed by CISS in San Jose, Plaintiff was to receive a salary of $1200 twice a month. *Id.* at 95:21-96:7. CISS had two pay periods per month. *Id.* at 54:10-12.

Throughout the course of Plaintiff's employment with CISS, CISS made the following payments to Plaintiff, including payments made on Plaintiff's behalf to Plaintiff's nephew:

| Gross Amount | Check Dated | Payment Method | Exhibits |
|---|---|---|---|
| $1005 | No check, bank entry dated 7/26/2013 | Counter Credit | 2, 31 |
| $940 | No check, bank entry dated 8/12/2013 | Counter Credit | 2, 31 |
| $160 | 8/10/2013 | Check Number 3304 | 1, 31 |
| $940 | 8/25/2013 | Check Number 5209 | 1, 31 |
| $160 | 8/25/2013 | Check Number 3342 | 1, 31 |
| $940 | 9/10/2013 | Check Number 2719 | 1, 2, 31 |
| $160 | 9/10/2013 | Check Number 3378 | 1, 31 |
| $940 | 10/3/2013 | Check Number 5277 | 1, 31 |
| $50 | 9/25/2013 | Check Number 5278 | 1, 31 |
| $160 | 9/25/2013 | Check Number 3420 | 1, 31 |
| $160 | 10/10/2013 | Check Number 3459 | 1, 31 |
| $980 | 10/10/2013 | Check Number 5346 | 1, 31 |
| $1100 | 10/20/2013 | Check Number 5347 | 1, 31 |
| $660 | 1/10/2014 | Check Number 5544 | 1, 31 |
| $50 | 1/10/2014 | Check Number 5545 | 1, 31 |
| $50 | 1/25/2014 | Check Number 5588 | 40, 43[13] |

---

[13] Defendants wrote a check for $1200 to Begashaw Bogale on January 25, 2014 that included

| | | | |
|---|---|---|---|
| $1000 | 2/3/2014 | Check Number 5607 | 43 |
| $600 | 2/10/2014 | Check Number 5608 | 43 |
| $700 | 2/25/2014 | Check Number 5642 | 1, 31 |
| $1200 | 3/10/2014 | Check Number 5670 | 1, 31 |
| $1200 | 3/25/2014 | Check Number 5704 | 1, 31 |
| $1200 | 4/10/2014 | Check Number 5733 | 1, 31 |
| $1200 | 4/25/2014 | Check Number 5753 | 1, 31 |
| $1200 | 5/5/2014 | Check Number 5766 | 1, 31 |
| $320 | 5/6/2014 | Check Number 5767 | 1, 31 |

In total, this comes to $17,075 paid by CISS to Plaintiff.[14]

**D. Plaintiff's Termination by Defendants**

Plaintiff filed the instant lawsuit on April 29, 2014. ECF No. 1. On April 30, 2014, Plaintiff gave notice to Nafees that Plaintiff would stop working for CISS on May 25, 2014. Trial Trans. Vol. 1 at 101:18-25; Exh. 26 (image capture of text message conversation between Plaintiff and Nafees on April 30, 2014); ECF No. 77 at 7 (parties' stipulation regarding the text message conversation). On May 5, 2014, the supervisor for the San Jose worksite, Wyland Chu, sent an email to Nafees complaining about Plaintiff's work. Exh. 23. Later that day, Plaintiff was fired and given two hours to move out of the trailer in San Jose. Trial Trans. Vol. 1 at 89:3-8, 105:21-106:10. Plaintiff believes he was fired for speaking with a lawyer. Trial Trans. Vol. 1 at 103:18-

holiday pay for Plaintiff. Trial Trans. Vol. 2 at 324:20-23. Exhibit 40, which is Defendants' list of payments they claim they made to Plaintiff, lists the full amount of the check written out to Bogale and notes that it includes $100 for "holiday pay." Bogale testified that the check included $1100 for Bogale's salary plus $50 in holiday pay for Bogale and $50 in holiday pay for Plaintiff. Trial Trans. Vol. 2 at 324:20-23. The Court therefore finds that Plaintiff received $50 from the check written to Bogale.

[14] Defendants' list of payments made to Plaintiff, Exhibit 40, includes an additional $500 as "Net Advance left over" from February 10, 2014. Plaintiff does not agree that he received this $500. *See* Exh. 31 (list of agreed payments, excluding the $500 advance). Exhibit 40 does not provide a check number for this payment or an exhibit number showing where evidence of this $500 payment may be found, and the Court has not found evidence in the record of this $500 advance. Accordingly, the Court finds that Defendants did not make a $500 advance to Plaintiff on February 10, 2014.

18

21. However, there is no evidence in the record that either of the Defendants knew that Plaintiff had spoken with a lawyer or filed the instant lawsuit at the time that Plaintiff was fired.[15] Defendant CISS was served in the instant lawsuit on May 13, 2014. ECF No. 17, Exh. 4. Defendants Nafees and Waqas were served on June 5, 2014. ECF No. 17, Exhs. 2-3.

## IV. CONCLUSIONS OF LAW

The Court makes the following conclusions of law based on the preceding findings of fact. The Court begins by discussing whether Defendant Waqas Memon may be held liable alongside Defendants Nafees Memon and CISS. The Court then turns to whether Plaintiff is entitled to recover under each of the causes of action raised at trial and the amount of Plaintiff's damages for each claim.

### A. Liability of Defendant Waqas Memon

Defendants argue that Waqas Memon may not be held liable as Plaintiff's employer.

The FLSA defines "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). The definition of "employer" under the FLSA "is not limited by the common law concept of 'employer,' but is to be given an expansive interpretation in order to effectuate the FLSA's broad remedial purposes." *Boucher v. Shaw*, 572 F.3d 1087, 1090 (9th Cir. 2009). The determination of whether an individual is an employer "does not depend on isolated factors but rather upon the circumstances of the whole activity." *Id.* at 1091. "Where an individual exercises control over the nature and structure of the

---

[15] Plaintiff testified that before he was fired, he received a phone call from Saleh Hamod, who told Plaintiff that Plaintiff would be fired for speaking to a lawyer. Trial Trans. Vol. 1 at 104:14-105:20. However, in response to a hearsay objection, Plaintiff's counsel clarified that this testimony went to Plaintiff's state of mind. *Id.* at 104:22-23. The Court therefore uses Plaintiff's testimony regarding the phone call from Saleh Hamod solely to show Plaintiff's state of mind. Moreover, even if the evidence were admissible to show the truth of the matter asserted, the Court finds that Plaintiff fails to satisfy his burden of establishing a *prima facie* case that he was fired in retaliation for speaking to a lawyer or for initiating this lawsuit, as required under the *McDonnell Douglas* burden shifting framework. *See* section IV.B.5, *infra*. Additionally, Defendants have provided a legitimate, nonretaliatory reason for Plaintiff's termination, namely that Plaintiff was fired in response to a complaint from Plaintiff's San Jose supervisor about Plaintiff's work. Moreover, Plaintiff has not shown that Defendants' reason for firing Plaintiff was untrue or pretextual. *See* section IV.B.5, *infra*.

19

employment relationship, or economic control over the relationship, that individual is an employer within the meaning of [the FLSA], and is subject to liability." *Id.*

For purposes of the California Labor Code, an employer is anyone "who directly or indirectly, or through an agent or any other person, employs or exercises control over the wages, hours, or working conditions of any person." IWC Wage Order No. 4-2001(2)(H).

In the instant case, Waqas Memon admits that he hired Plaintiff, ECF No. 77 at 7 (parties' stipulation that Waqas hired Plaintiff), assigned Plaintiff work, Trial Trans. Vol. 3 at 544:9-14, guaranteed Plaintiff a minimum monthly compensation, *id.* at 544:17-18, responded to complaints about Plaintiff, *id.* at 561:1-7, and ran payroll to pay all CISS employees, *id.* at 567:1-6. Nafees Memon admits that Waqas had the authority to hire security guards, assign security guards to worksites, sign contracts with clients, discipline employees, receive employee complaints, and respond to employee complaints. *Id.* at 523:2-14, 524:14-525:8. Indeed, Nafees said that while Nafees was in Pakistan, Waqas "was doing everything" to run CISS, *id.* at 523:2, and Nafees was in Pakistan when Plaintiff was hired. ECF No. 77 at 6. By making the decision to hire Plaintiff, assigning Plaintiff work, guaranteeing Plaintiff a monthly salary, paying Plaintiff, and addressing complaints about Plaintiff, Waqas "exercise[d] control over the nature and structure of the employment relationship" with Plaintiff. *See Boucher*, 572 F.3d at 1091. Therefore, in light of the FLSA's remedial purpose, Waqas was an employer for purposes of FLSA liability. *See id.* at 1090-91 (holding that, in light of the FLSA's remedial purpose, "an individual exercises control over the nature and structure of the employment relationship" is "an employer within the meaning of [the FLSA], and is subject to liability.").

Waqas assigned work to Plaintiff and had the authority to discipline Plaintiff by changing Plaintiff's work hours. Trial Trans. Vol. 3 at 524:14-17, 559:14-19. Thus, Waqas exercised control over Plaintiff's work hours and working conditions. Accordingly, Waqas is also an employer for purposes of the California Labor Code. *See* IWC Wage Order No. 4-2001(2)(H) (an individual "who directly or indirectly, or through an agent or any other person, employs or exercises control over the wages, hours, or working conditions of any person" is an employer).

20

Therefore, under both the FLSA and the California Labor Code, Waqas may be held liable as Plaintiff's employer.

**B. Plaintiff's Claims Under the FLSA and California Law**

**1. Failure to Pay Overtime (Counts 1 and 2)**

Count 1 is a claim for failure to pay overtime under the FLSA. Count 2 is a claim for failure to pay overtime under California law. The Court first discusses whether Plaintiff is entitled to damages under Counts 1 and 2, then discusses the appropriate hourly rate to use to calculate the amount of unpaid overtime, and finally discusses the damages owed to Plaintiff.

**a. Liability for failure to pay overtime**

Pursuant to the FLSA, "no employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of [forty hours] at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1).

California Labor Code § 1194 provides a right to sue for unpaid minimum wages or overtime compensation. Additionally, California Labor Code § 510 provides that:

> Eight hours of labor constitutes a day's work. Any work in excess of eight hours in one workday and any work in excess of 40 hours in any one workweek and the first eight hours worked on the seventh day of work in any one workweek shall be compensated at the rate of no less than one and one-half times the regular rate of pay for an employee. Any work in excess of 12 hours in one day shall be compensated at the rate of no less than twice the regular rate of pay of an employee.

An employee bringing a claim "for unpaid minimum wages or unpaid overtime compensation, together with liquidated damages, has the burden of proving that he performed work for which he was not properly compensated." *Anderson v. Mt. Clemens Pottery*, 328 U.S. 680, 686-87 (1946), *superseded by statute on other grounds as recognized by Integrity Staffing Sol'ns, Inc. v. Busk*, 135 S. Ct. 513 (2014). However, "[i]n view of the remedial purpose of the FLSA and the employer's statutory obligation to keep proper records of wages, hours and other conditions and practices of employment, this burden is not to be an impossible hurdle for the

21

employee." *Brock v. Seto*, 790 F.2d 1446, 1448 (9th Cir. 1986). "[W]here the employer's records are inaccurate or inadequate and the employee cannot offer convincing substitutes . . . the solution . . . is not to penalize the employee by denying him any recovery on the ground that he is unable to prove the precise extent of uncompensated work." *Id.*

If the employer's records are inaccurate or inadequate, "an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of a just and reasonable inference." *Id.* "The burden then shifts to the employer to show the precise number of hours worked or to present evidence sufficient to negate the reasonableness of the inference to be drawn from the employee's evidence." *Id.* If the employer fails to make such a showing, the Court "may then award damages to the employee, even though the result be only approximate." *Id.* "[A]n award of back wages will not be barred for imprecision where it arises from the employer's failure to keep records as required by the FLSA." *Id.*; *see also Hernandez v. Mendoza*, 199 Cal. App. 3d 721, 726-27 (1988) (applying the standard set forth in *Brock* in connection with a California Labor Code claim).

In the instant case, Defendants claim that Plaintiff was compensated for the hours recorded in the Defendants' scheduling records, which were admitted at trial as Exhibits 3 through 20. However, the Court finds that Defendants' scheduling records are not an accurate or reliable record of the hours Plaintiff actually worked. Plaintiff has presented evidence that his work hours exceeded those recorded in Defendants' scheduling records, and thus Plaintiff's work hours exceeded those for which he was properly compensated. Although the Court found Plaintiff's DARs insufficient to establish Plaintiff's work hours, the Court found Plaintiff's testimony regarding his work schedule, together with the testimony of Abel Assamene, Bill Gamboa, and Stephen Ng and the CISS contracts for the worksites at Ontario and San Jose sufficient for the Court to reasonably infer Plaintiff's work hours. Defendants have not met their burden of showing the precise number of hours worked and have not presented credible evidence sufficient to negate the reasonableness of the inference to be drawn from Plaintiff's evidence. Therefore,

Plaintiff is entitled to recover for Defendants' failure to pay overtime compensation.

### b. Plaintiff's hourly rate of pay

Under the FLSA, "[a]bsent explicit proof of a mutually agreed upon rate of hourly pay, the regular rate actually paid to a salaried employee is obtained by dividing the employee's weekly wage by the number of hours worked each week." *Bao Yi Yang v. Shanghai Gourmet, LLC*, 471 Fed. App'x 784, 786 (9th Cir. Mar. 15, 2012) (citing *Brennan v. Valley Towing Co.*, 515 F.2d 100, 105-06 (9th Cir. 1975); *Marshall v. Chala Enters., Inc.*, 645 F.2d 799, 801 (9th Cir. 1981)). However, 29 C.F.R. § 778.107 provides that for purposes of the FLSA, "[t]he regular rate of pay at which the employee is employed may in no event be less than the statutory minimum." Under 29 C.F.R. § 778.113(b), if an employee's salary "covers a period longer than a workweek, such as a month, it must be reduced to its workweek equivalent" for purposes of calculating the employee's hourly rate. "A monthly salary is subject to translation to its equivalent weekly wage by multiplying by 12 (the number of months) and dividing by 52 (the number of weeks)." 29 C.F.R. § 778.113(b). For Plaintiff's California law claims, a salaried employee's "regular rate of pay" is calculated "by dividing the total weekly salary by no more than 40 hours, regardless of the number of hours actually worked." *Ghory v. Al-Lahham*, 209 Cal. App. 3d 1487, 1490 (1989).

In this case, the Court has found that there was no agreed upon hourly wage and that instead Plaintiff received a twice-monthly salary from CISS of $1100 while Plaintiff worked in Linda, Anaheim, and Ontario and of $1200 while Plaintiff worked in San Jose. Trial Trans. Vol. 1 at 61:1-15, 79:23-80:2. The Court calculates that these salaries correspond to weekly salaries of $507.69 per week[16] in Linda, Anaheim, and Ontario, and $553.85 per week[17] in San Jose. Applying the formula specified in *Bao Yi Yang*, 471 Fed. App'x 784, for determining a regular hourly rate from a weekly salary, the Court calculates that Plaintiff's regular rate under the FLSA was $5.29 per hour[18] in Linda, $5.29 per hour[19] in Anaheim, $5.29 per hour[20] the first two weeks

---

[16] $1100 x 2 x 12 = $26400 per year / 52 weeks = $507.69 per week
[17] $1200 x 2 x 12 = $28800 per year / 52 weeks = $553.85 per week
[18] $507.69 per week / 96 hours per week = $5.29 per hour
[19] $507.69 per week / 96 hours per week = $5.29 per hour. Plaintiff did not work a full week in

23

United States District Court
Northern District of California

in Ontario, \$4.57 per hour[21] in Ontario after the first two weeks, and \$5.22 per hour[22] in San Jose. However, at the time Plaintiff was employed by CISS, the statutory minimum wage in California was \$8 per hour. Cal. Labor Code § 1182.12 (effective Jan. 1, 2007 to Dec. 31, 2013) (\$8 per hour minimum wage); Cal. Labor Code § 1182.12 (2015) (increasing the minimum wage to \$9 per hour beginning July 2014). The Court therefore uses \$8 per hour as Plaintiff's regular rate under the FLSA. *See* ECF No. 105 at 16 (Plaintiff's closing brief, calculating damages using a minimum wage of \$8 per hour); 29 C.F.R. § 778.107 (for purposes of the FLSA, "[t]he regular rate of pay at which the employee is employed may in no event be less than the statutory minimum.").

Using the formula specified in *Ghory v. Al-Lahham*, 209 Cal. App. 3d 1487, the Court calculates that Plaintiff's regular rate under the California Labor Code should have been \$12.69 per hour[23] in Linda, Anaheim, and Ontario, and \$13.85 per hour[24] in San Jose.

### c. Damages owed to Plaintiff

Both the FLSA and the California Labor Code permit Plaintiff to recover unpaid overtime wages. 29 U.S.C. § 216(b) (permitting a plaintiff to recover the full amount of unpaid overtime wages); Cal. Labor Code § 1194 (permitting a plaintiff to recover the full amount of unpaid overtime wages). Defendants argue that Plaintiff cannot recover the full amount of unpaid overtime under both the FLSA and the California Labor Code, ECF No. 106 (Defendant's closing brief), and Plaintiff has requested the full amount of unpaid overtime only under the California Labor Code, ECF No. 105 at 15 (Plaintiff's closing brief). Therefore, the Court awards Plaintiff the full amount of unpaid overtime wages under the California Labor Code.

---

Anaheim so the Court must approximate the total number of hours in a full workweek for the Anaheim worksite. Plaintiff's weekend schedule in Anaheim was the same as Plaintiff's weekend schedule in Linda (where Plaintiff worked before working in Anaheim) and in Ontario (where Plaintiff worked after working in Anaheim). In Linda and for the first two weeks in Ontario, Plaintiff worked 96 hours per week. Therefore, the Court uses 96 hours per week to calculate Plaintiff's hourly wage in Anaheim as well.
[20] \$507.69 per week / 96 hours per week = \$5.29 per hour
[21] \$507.69 per week / 111 hours per week = \$4.57 per hour
[22] \$553.85 per week / 106 hours per week = \$5.22 per hour
[23] \$507.69 per week / 40 hours per week = \$12.69 per hour
[24] \$553.85 per week / 40 hours per week = \$13.85 per hour

Case No. 14-CV-01960-LHK
FINDINGS OF FACT AND CONCLUSIONS OF LAW FOLLOWING BENCH TRIAL

United States District Court
Northern District of California

Using Plaintiff's regular rate of pay and calculating overtime pursuant to California Labor Code § 510, the Court calculates that Plaintiff should have received payment of $66,616.15.[25] Plaintiff was paid only $17,075. Thus, the full amount of unpaid overtime owed to Plaintiff under the California Labor Code is $49,541.15.[26]

Plaintiff additionally requests liquidated damages under the FLSA. Under the FLSA, "[a]ny employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). "The liquidated damages are mandatory unless the employer establishes both subjective and objective good faith in its violation." *Cruz v. Quang*, No. 13-CV-00181 VC, 2015 WL 348869, at *6 (N.D. Cal. Jan. 23, 2015). In the instant case, there is no evidence that Defendants acted with subjective and objective good faith in their failure to pay Plaintiff for overtime, so Plaintiff is entitled to liquidated damages under the FLSA.

Where a plaintiff sues for unpaid overtime under both the FLSA and the California Labor Code, FLSA liquidated damages are calculated based on the FLSA regular rate of pay even if the plaintiff's damages for the actual amount of unpaid overtime is calculated based on the California Labor Code regular rate of pay. *See Hernandez v. Martinez*, No. 12-CV-06133, 2014 WL

---

[25] In Linda, Anaheim, and Ontario, Plaintiff worked a total of 968 regular hours, 924 overtime hours, and 472 double overtime hours. Plaintiff's regular rate of pay in Linda, Anaheim, and Ontario should have been $12.69. Therefore, the Court calculates the total compensation to which Plaintiff was entitled for Linda, Anaheim, and Ontario as follows:
(968 regular hours x $12.69 per hour) + (924 overtime hours x 1.5 x $12.69 per hour) + (472 double overtime hours x 2 x $12.69 per hour) = $41,859.23 compensation due for Linda, Anaheim, and Ontario together.
In San Jose, Plaintiff worked a total of 464 regular hours, 472 overtime hours, and 308 double overtime hours. Plaintiff's regular rate of pay in San Jose should have been $13.85 per hour. Therefore, the Court calculates the total compensation to which Plaintiff was entitled for San Jose as follows:
(464 regular hours x $13.85 per hour) + (472 overtime hours x 1.5 x $13.85 per hour) + (308 double overtime hours x 2 x $13.85 per hour) = $24,756.92 compensation due for San Jose.
Adding the compensation owed to Plaintiff for Linda, Anaheim, and Ontario with the compensation owed to Plaintiff for San Jose, the Court calculates the total compensation to which Plaintiff was entitled as follows:
$41,859.23 + $24,756.92 = $66,616.15
[26] $66,616.15 - $17,075 = $49,541.15

Case No. 14-CV-01960-LHK
FINDINGS OF FACT AND CONCLUSIONS OF LAW FOLLOWING BENCH TRIAL

3962647, at *12 (N.D. Cal. Aug. 13, 2014) (awarding damages to the plaintiff for the actual amount of unpaid overtime under the California Labor Code but calculating FLSA liquidated damages using the FLSA regular rate of pay); *Rosas v. Hua Ping Chang*, No. 5:13-cv-01800 HRL, 2014 WL 4925122, at *4 (N.D. Cal. Sept. 29, 2014) (recommending awarding actual unpaid overtime under the California Labor Code but calculating FLSA liquidated damages using the FLSA regular rate of pay). The Court therefore calculates Plaintiff's FLSA liquidated damages based on the amount of unpaid overtime under the FLSA, not under the California Labor Code.

The Court concludes that under the FLSA, Plaintiff was entitled to receive $37,568,[27] but Plaintiff was paid only $17,075. Thus, Plaintiff's liquidated damages under the FLSA are $20,493.[28]

### 2. Failure to Pay Minimum Wage (Count 3)

Count 3 is a claim for liquidated damages under California Labor Code § 1194.2. California Labor Code § 1194.2 provides that:

> In any action under Section 98, 1193.6, 1194, or 1197.1 to recover wages because of the payment of a wage less than the minimum wage fixed by an order of the commission or by statute, an employee shall be entitled to recover liquidated damages in an amount equal to the wages unlawfully unpaid and interest thereon. Nothing in this subdivision shall be construed to authorize the recovery of liquidated damages for failure to pay overtime compensation.

Claims for back pay under the California Labor Code are subject to the burden shifting analysis described in section IV.B.1.a., *supra*. *See Hernandez*, 199 Cal. App. 3d at 726-27 (applying the standard set forth in *Brock*, 790 F.2d at 1448, in connection with a California Labor Code claim).

---

[27] Plaintiff worked a total of 1432 regular hours, 1396 overtime hours, and 780 double overtime hours. Because FLSA does not provide for double overtime, the Court adds the 1396 overtime hours and the 780 double overtime hours in order to calculate FLSA liquidated damages. For purposes of FLSA, Plaintiff's regular rate at Linda, Anaheim, Ontario, and San Jose should have been $8 per hour. Therefore, the Court calculates the total compensation to which Plaintiff was entitled as follows:
(1432 regular hours x $8 per hour) + ((1396 overtime hours + 780 double overtime hours) x 1.5 x $8 per hour) = $37,568 compensation due for Linda, Anaheim, Ontario, and San Jose
[28] $37,568 - $17,075 = $20,493

Case No. 14-CV-01960-LHK
FINDINGS OF FACT AND CONCLUSIONS OF LAW FOLLOWING BENCH TRIAL

Although the California Labor Code does not permit a plaintiff to recover liquidated damages for failure to pay overtime, *see id.*, a plaintiff who brings a claim for failure to pay overtime may recover liquidated damages under California Labor Code § 1194.2 if the plaintiff also shows that the plaintiff was paid less than the minimum wage. *See, e.g.*, *Cruz*, 2015 WL 348869 at *4, *8 (award plaintiff damages for failure to pay overtime under Cal. Labor Code § 1194 and liquidated damages for failure to pay minimum wage under Cal. Labor Code § 1194.2).

In the instant case, Plaintiff was paid between $4.57 per hour and $5.29 per hour, depending on the worksite.[29] Plaintiff's compensation therefore fell below the California minimum wage of $8 per hour. Cal. Labor Code § 1182.12 (effective Jan. 1, 2007 to Dec. 31, 2013) ($8 per hour minimum wage); Cal. Labor Code § 1182.12 (2015) (increasing the minimum wage to $9 per hour beginning July 2014); ECF No. 105 at 16 (Plaintiff's closing brief, using $8 per hour as the minimum wage in California). If Plaintiff had been paid at least minimum wage, he would have received $28,864,[30] but Plaintiff was paid only $17,075. Therefore, Plaintiff is entitled to receive $11,789[31] in liquidated damages under California Labor Code § 1194.2.

### 3. Meal and Rest Breaks (Counts 4 and 5)

Count 4 is a claim for failure to provide rest breaks and Count 5 is a claim for failure to provide meal breaks, as required by California Labor Code § 226.7.

California Labor Code § 226.7(b) provides that "[a]n employer shall not require an employee to work during a meal or rest or recovery period mandated pursuant to an applicable statute, or applicable regulation, standard, or order of the Industrial Welfare Commission, the Occupational Safety and Health Standards Board, or the Division of Occupational Safety and Health." "If an employer fails to provide an employee a meal or rest or recovery period in accordance with a state law . . . the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each workday that the meal or rest or recovery

---

[29] For calculations, see footnotes 18 to 22, *supra*.
[30] 3608 total hours x $8 per hour = $28,864
[31] $28,864 - $17,075 = $11,789

period is not provided." Cal. Labor Code § 226.7(c).

The California Supreme Court has held that an employer satisfies the obligation to provide meal breaks "if it relieves its employees of all duty, relinquishes control over their activities and permits them a reasonable opportunity to take an uninterrupted 30-minute break, and does not impede or discourage them from doing so." *Brinker Restaurant Corp. v. Superior Court*, 53 Cal. 4th 1004, 1040 (2012). "[T]he employer is not obligated to police meal breaks and ensure no work thereafter is performed." *Id.* Claims for back pay under the California Labor Code are subject to the burden shifting analysis described in section IV.B.1.a., *supra. See Hernandez*, 199 Cal. App. 3d at 726-27 (applying the standard set forth in *Brock*, 790 F.2d at 1448, in connection with a California Labor Code claim).

In the instant case, the Court has found that Plaintiff was permitted to and did take meal and rest breaks as necessary. Trial Trans. Vol. 1 at 108: 13-14, 109:15-21; *accord* Exh. 24 (CISS handbook, including meal and rest break policy); ECF No.77 at 7 (stipulation that Defendants have a written meal and rest break policy); Trial Trans. Vol. 2 at 257:4-15 (Assamene, who replaced Plaintiff in Ontario and who was trained by Plaintiff, believed meal and rest breaks were permitted as necessary). Because Plaintiff was permitted to take meal and rest breaks, Defendants' obligation to provide meal and rest breaks was satisfied, and Defendants were under no obligation to ensure that Plaintiff always took his meal and rest breaks. *See Brinker*, 53 Cal. 4th at 1040 ("[T]he employer is not obligated to police meal breaks and ensure no work thereafter is performed."). Therefore, Plaintiff is not entitled to damages for missed meal and rest breaks.

### 4. Itemized Wage Statements (Count 6)

Count 6 is a claim for penalties for failure to provide an accurate itemized wage statement, as required by California Labor Code § 226.

California Labor Code § 226 requires employers to provide each employee with an accurate itemized wage statement in writing. If an employer knowingly and intentionally fails to provide an accurate wage statement to an employee, the employee may recover "the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one

28

hundred dollars ($100) per employee for each violation in a subsequent pay period, not to exceed an aggregate penalty of four thousand dollars ($4,000)." Cal. Labor Code § 226.

Defendants admit that they did not provide Plaintiff with itemized wage stubs as required by Cal. Labor Code § 226 and that they are liable to Plaintiff for penalties related to their failure to provide an accurate wage statement. ECF No. 77 at 3, 4. Plaintiff worked for Defendants for 18 pay periods.[32] Thus, Plaintiff is entitled to $1,750 in penalties under Cal. Labor Code § 226.

### 5. Wrongful Termination and Retaliatory Discharge (Counts 8 and 9)

Count 8 is a claim for wrongful termination in violation of public policy and California Labor Code § 1102.5. Count 9 is a claim for damages for retaliatory discharge pursuant to California Labor Code § 1102.5(f).

Under California, law "[w]rongful termination from employment is tortious when the termination occurs in violation of a fundamental public policy." *Gould v. Maryland Sound Industries*, 31 Cal. App. 4th 1137, 1147 (1995). "Wrongful termination cases typically arise when an employer retaliates against an employee for refusing to violate a statute, performing a statutory obligation, exercising a statutory right, or reporting an alleged violation of a statute of public importance." *Id.* California's wage and hour laws embody a fundamental public policy of the state, such that termination for reporting violations of overtime wage laws constitutes wrongful termination in violation of public policy. *Id.* at 1148-49.

In relevant part, California Labor Code § 1102.5(b) provides as follows:

> An employer, or any person acting on behalf of the employer, shall not retaliate against an employee for disclosing information, or because the employer believes that the employee disclosed or may disclose information, to a government or law enforcement agency, to a person with authority over the employee or another employee who has the authority to investigate, discover, or correct the violation or noncompliance, or for providing information to, or testifying before,

---

[32] CISS had two pay periods per month. Trial Trans. Vol. 1 at 54:10-12; Trial Trans. Vol. 3 at 520:6-7. Based on Plaintiff's start and end dates with CISS, Plaintiff worked for CISS during two pay periods per month for the months of July 2013, August 2013, September 2013, December 2013, January 2014, February 2014, March 2014, and April 2014, plus one pay period for the first half of October 2013 and one pay period for the first half of May 2014.

29

> any public body conducting an investigation, hearing, or inquiry, if the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation, regardless of whether disclosing the information is part of the employee's job duties.

Section 1102.5(f) provides:

> In addition to other penalties, an employer that is a corporation or limited liability company is liable for a civil penalty not exceeding ten thousand dollars ($10,000) for each violation of this section.

Claims for wrongful termination in violation of public policy and for violation of California Labor Code § 1102.5 are evaluated under the burden shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Smith v. Equinox Holdings, Inc.*, No. 14-cv-00846-LB, 2015 WL 1952564, at *10-12 (N.D. Cal. April 10, 2015); *Loggins v. Kaiser Permanente Int'l*, 151 Cal. App. 4th 1102, 1108-09 (2007). The *McDonnell-Douglas* burden shifting analysis is as follows:

> In the first stage, the plaintiff must show (1) he or she engaged in a 'protected activity,' (2) the employer subjected the employee to an adverse employment action, and (3) a causal link existed between the protected activity and the employer's action. If the employee successfully establishes these elements and thereby shows a *prima facie* case exists, the burden shifts to the employer to provide evidence that there was a legitimate, nonretaliatory reason for the adverse employment action. If the employer produces evidence showing a legitimate reason for the employment action, the presumption of retaliation drops out of the picture, and the burden shifts back to the employee to provide substantial responsive evidence that the employer's proffered reasons were untrue or pretextual.

*Loggins*, 151 Cal. App. 4th at 1109 (citations omitted). The plaintiff must show a causal link between the plaintiff's protected activity and the employer's action by a preponderance of the evidence in order to meet the plaintiff's initial burden of making a *prima facie* case of retaliation. *Guz v. Bechtel Nat. Inc.*, 24 Cal. 4th 317, 380 (2000).

In the instant case, Plaintiff argues that he is entitled to damages for wrongful termination and retaliatory discharge because he was fired for filing the instant lawsuit and/or for speaking to a lawyer. The Court finds that Plaintiff has not met his initial burden under *McDonnell Douglas* to

30

show by a preponderance of the evidence that he was fired in retaliation for filing the instant lawsuit or for speaking to a lawyer. The only evidence in the record to support Plaintiff's allegation of retaliatory discharge is that Plaintiff was fired on May 5, 2014, shortly after Plaintiff filed the instant lawsuit on April 29, 2014. Defendant CISS was not served with the complaint in the instant lawsuit until May 13, 2014. ECF No. 17, Exh. 4. Defendants Nafees Memon and Waqas Memon were not served with the complaint until June 5, 2014. ECF No. 17, Exhs. 2-3. There is no evidence in the record to show that Defendants were aware of the lawsuit before Defendants were served.

Plaintiff testified that before he was fired, he received a phone call from Saleh Hamod, who told Plaintiff that Plaintiff would be fired for speaking to a lawyer. Trial Trans. Vol. 1 at 104:14-105:20. However, this evidence was admitted solely to show Plaintiff's state of mind. *Id.* at 104:22-23. Even if the evidence of Saleh Hamod's phone call were admissible for the truth of the matter asserted, Plaintiff has introduced no evidence showing that Nafees or Waqas knew Plaintiff had spoken to a lawyer.

Moreover, Defendants have introduced evidence that Plaintiff was fired for a legitimate, nonretaliatory reason. Specifically, Defendants testified that Plaintiff was fired because of complaints received by CISS from the San Jose site supervisor about Plaintiff's work. Exhibit 23 shows an email from the San Jose supervisor, Wyland Chu, to Nafees Memon on May 5, 2014 complaining about Plaintiff's work. Exh. 23. Plaintiff was fired later on the same day. Trial Trans. Vol. 1 at 89:3-8, 105:21-106:10; Trial Trans. Vol. 2 at 440:18-441:23; ECF No. 105, Exh. 1 (Plaintiff's closing brief, using May 4, 2014 as Plaintiff's last day of work). Plaintiff has not produced "substantial responsive evidence" showing that Defendants' proffered reason for firing Plaintiff was untrue or pretextual. *See Loggins*, 151 Cal. App. 4th at 1109 (once the defendant produces evidence that the plaintiff was fired for a nonretaliatory reason, the burden shifts to the plaintiff to produce "substantial responsive evidence" showing that the defendant's proffered reason is untrue or pretextual). Therefore, Plaintiff has not met his burden under the *McDonnell Douglas* framework, and Plaintiff is not entitled to damages for wrongful termination in violation

of public policy or in violation of California Labor Code § 1102.5.

**6. Waiting Time Penalties (Count 10)**

Count 10 is a claim for waiting time penalties under California Labor Code § 203.

California Labor Code § 203 provides that:

> If an employer willfully fails to pay, without abatement or reduction, in accordance with Sections 201, 201.3, 201.5, 201.9, 202, and 205.5, any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days.

"Waiting time" penalties under California Labor Code § 203 may be collected only after an employee is discharged or quits until a lawsuit is filed. *Id.*; *see also Triad Data Servs., Inc. v. Jackson*, 153 Cal. App. 3d Supp. 1, 12 (1984) ("waiting time" penalties under § 203 accrue until "a complaint with the clerk of a *court of justice*" is filed). In the instant case, Plaintiff filed his lawsuit on April 29, 2014, but he was not fired until May 5, 2014. Therefore, there was no time period between when Plaintiff was fired and when Plaintiff filed the lawsuit, so Plaintiff is not entitled to any "waiting time" penalties under California Labor Code § 203.

## V. CONCLUSION

For the foregoing reasons, the Court finds that Defendants CISS, Nafees Memon, and Waqas Memon are liable to Plaintiff on Counts 1, 2, 3, and 6. The Court awards damages to Plaintiff in the following amounts:

| | |
|---|---|
| Unpaid Overtime, Cal. Labor Code § 1194 | $49,541.15 |
| Liquidated Damages, 29 U.S.C. § 216(b) | $20,493.00 |
| Liquidated Damages, Cal. Labor Code § 1194.2 | $11,789.00 |
| Failure to Provide Wage Statements, Cal. Labor Code § 226 | $1,750.00 |

The total amount of damages owed to Plaintiff is $83,573.15. The Court enters judgment for Plaintiff and against Defendants CISS, Nafees Memon, and Waqas Memon on Counts 1, 2, 3, and 6 in the amount of $83,573.15.

The Court enters judgment for Defendants on Counts 4, 5, 8, 9, and 10.

**IT IS SO ORDERED.**

Dated: December 22, 2015

_Lucy H. Koh_

LUCY H. KOH
United States District Judge

Case No. 14-CV-01960-LHK
FINDINGS OF FACT AND CONCLUSIONS OF LAW FOLLOWING BENCH TRIAL